THOMAS J. MOORE, Ex'r of JAMES W. OSBORNE, v. WASH-INGTON BYERS and wife and others.

Under the Act of 1868–'9, ch. 113, sub-ch. 4, sec. 24, explained by the Act of 1869–'70, ch. 58, an executor who has taken out letters testamentary since the 1st of July, 1869, must pay all the debts due from the estate of his testator *pro rata*, according to their class; and the testator cannot give to a debt a preference over other debts of the same class by a bequest of it to the creditor.

Where a vendor of land receives a part of the purchase money and takes notes for the residue thereof, retaining the title until such notes shall be paid, and afterwards a judgment is obtained and docketed against him, and he then dies, the judgment will not be a lien upon the land or the notes in the hands of his executors, but the notes will be assets when collected for the payment of debts.

The cases of *Badham* v. *Cox*, 11 Ired. 456, and *Giles* v. *Palmer*, 4 Jones 386, cited and approved.

This was an action brought in the Court of Probate for MECKLENBURG County by the plaintiff, as executor of James W. Osborne, against the defendants, who were creditors of the estate of the testator. The material allegations of the complaint were that the testator died on the 9th day of August, 1869, leaving a will of which the plaintiff qualified as executor; that by his will the testator bequeathed certain promissory notes to his wife in trust for his niece, Mrs. Byers, who is one of the defendants, and that after satisfying that trust, the residue of the proceeds of the notes and of all his other property should be applied to the payment of certain preferred debts, and then to all his debts equally; that on the 29th of February, 1869, the testator sold a valuable tract of land to one J. L. Parks for the sum of $12,-000, of which he received in cash $7,200 and took for the residue of the purchase money $4,800 in promissory notes, retaining the title to the land until they should be paid; that the said notes remained unpaid at the time of the testator's death, and that they and the proceeds of the other

property of the testator, sold by the executor, amounted to about the sum of $6,000; that the preferred debts mentioned in the will amounted to more than that sum, and that there were other debts amounting in the aggregate to about $20,000; that at the May Term, 1869, of the Superior Court of Mecklenburg County, the defendants, J. M. & S. A. Potts, recovered judgments against the testator and his sureties for debts due them, and sued out execution thereon, but no levy upon the property of the testator had been made.

Upon the foregoing allegation of facts, the plaintiff asked instructions from the Court as to the disbursement of the funds in his hand as executor, as follows :

1. Have the debts preferred by the will to be first discharged?

2. Has payment to be made to all the creditors of the testator, including those preferred by the will, in accordance with the Act of 1868-'69, ch. 113?

3. Does the judgment in favor of J. M. & S. A. Potts create a lien on the estate of the testator which is entitled to a priority of satisfaction out of the trust assets ?

In the several answers of the defendants, the creditors, whose debts were specially mentioned and preferred by the testator in his will, insisted that they had a right to a priority of payment out of the Parks notes and the proceeds of the other property. J. M. & S. A. Potts and the sureties to the debts due them contended that the judgment obtained against the testator in his life time was a lien on his property and gave it a priority of satisfaction.

The questions of law which were thus presented to the Judge of Probate were sent up to the Judge of the Superior Court, and at Chambers, January 11th, 1871, his Honor, *Judge Logan,* thus decided.

"1. It is the opinion of the Court that the judgment in favor of J. M. & S. A. Potts is a lien on the property of the

16

·deceased at his death, and is entitled to payment out of the ·estate of the testator according to the Act of Assembly of .1868-'69, class 5th.

2. That payment to all other creditors of the testator will be made, including those preferred by the will, in accordance with the provisions of the Act of 1868-'69."

From the judgment given in accordance with this opinion both parties appealed.

*J. H. Wilson*, for the plaintiff.
*Guion*, for the defendant.·

READE, J.   The statute concerning the settlement of the ·estates of deceased persons, fixes the dignity of debts, and directs that each debt shall be paid *pro rata*, equally in its class, and forbids executors and administrators to exercise any preference.   Act of 1868-'9, ch. 113.   In the argument it was supposed, that this statute prevents the legacy to Mrs. Osborne from taking effect; because it would defeat the policy of the law to allow a testator to prefer one debt to another.   On the other side it was insisted, that the testator, in his life time, might have preferred one debt to another, either by a conveyance or by payment, and why not ·by will, as well ?

· It is true that the legacy to Mrs. Osborne cannot take ·effect; but that is not because of the statute.   It would not take effect if that statute had not been passed.   This will be apparent if it be remembered, that all the property and effects of a testator vests in the executor—first for the payment of debts, and secondly, for the satisfaction of legacies. And no legacy can take effect, until the executor assents, .and the executor cannot assent without a devastavit until ·*all* the debts are paid.·   The estate being insolvent, it follows, that the executor cannot assent to Mrs. Osborne's legacy at

all, but must exhaust the whole estate in the payment of debts.

In paying out the assets to the debts, the executor might give effect to the will of the testator, not by assenting to the legacy as a *legacy*, but by preferring the debts which the legacy was intended to secure. But then comes in the statute which forbids him to prefer one debt to another of the same dignity. So that the legacy cannot take effect directly as a legacy, nor indirectly as a preferred debt. This answers the first question.

The second question, whether the debts must be paid under the statute, is answered in the affirmative.

The third question, whether the land sold by testator to Parks was subject to levy and sale under the execution of Potts ? is answered in the negative. Where land is sold, title retained, bonds for title when money paid, part paid and part unpaid, neither the interest of the vendor or vendee can be levied on and sold. The vendee has only an equity to call for the title when he pays all the money, and his is not an equity subject to levy and sale under the Act of 1812. The vendor holds the legal estate in trust for the vendee, and is obliged specifically to perform the contract to make title when the money is paid, and a levy and sale would divest him of the legal estate and would defeat the contract of the parties. The rights of the parties are adjustable as equities only. The debt due the vendor in this case upon the contract of sale, is assets, when collected, for the payment of debts. *Badham* v. *Cox*, 11 Ire. 456. *Giles* v. *Palmer*, 4 Jones 386.

PER CURIAM.                    Judgment reversed.